UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAMON KEITH CLARK, JR., | ) | Case No. 4:10CV1264 |
| Petitioner, | ) ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) | Magistrate Judge George J. Limbert |
| ED SHELDON[1], Warden, | ) ) | |
| Respondent. | ) ) ) | **Report and Recommendation of Magistrate Judge** |

On June 4, 2010, Petitioner Damon Keith Clark, Jr. ("Petitioner"), acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred as a result of his conviction and sentence in the Mahoning County, Ohio Court of Common Pleas, for complicity in the commission of the offense of murder in violation of R.C. 2903.02(B)(D), with a specification pursuant to R.C. 2941.146(A), and improperly discharging a firearm into a habitation in violation of R.C. 2923.161(A)(B), with a specification pursuant to R.C. 2941.146(A). On December 27, 2010, Respondent Ed Sheldon ("Respondent"), Warden of Toledo Correctional Institution, where Petitioner is incarcerated, filed an answer/return of writ. ECF Dkt. #5. On March 8, 2011, Petitioner filed his traverse. ECF Dkt. #10. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

---

[1] Petitioner is housed at Toledo Correctional Institution, where Ed Sheldon is the warden. *See www.drc.ohio.gov* "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . ." *Rumsfeld v. Padilla,* 542 U.S. 426, 435 (2004). Accordingly, the Petition should be amended to name Ed Sheldon as respondent.

I.  **SYNOPSIS OF THE FACTS**

The Seventh District Court of Appeals of Ohio set forth the relevant facts and procedural history of this case on direct appeal.  ECF Dkt. #5-1 at 348-369.[2]  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> {¶ 2} On May 5, 2007, appellant left a party to visit his cousin, Joseph Moreland, at his house on Stewart Street in Youngstown, Ohio.  Due to a conflict between appellant and another guest, Joseph Moreland told appellant to leave his home.  Joseph pushed appellant causing him to fall and land in a children's power vehicle.  Joseph Moreland and appellant then argued.
>
> {¶ 3} Appellant then left driving a blue Buick that belonged to the mother of his children but that he often drove.  Appellant dropped his brother, Kevon Moreland, and his cousin, Lewon Bell, back off at the party they had previously attended.  Rather than reentering the party as intended, appellant left with Stoney Williams, who had approached the Buick. (Kevon Moreland and Lewon Bell had both witnessed Stoney Williams carrying a gun at the party earlier.)  Appellant then picked up Stoney Williams' friend, Darryl Mason, who thought he was being transported to the party. However, appellant drove toward Stewart Street instead.
>
> {¶ 4} At the time, Joseph Moreland was standing on his front porch speaking to his cousin, Jean Madison, and his aunt, Angela Moreland, who was holding the hand of her three-year-old niece, Cherish Moreland. They had walked over to his house when they heard him arguing with someone on the telephone.  Joseph Moreland was concerned because, from statements appellant made when he left the house and additional statements he made over the telephone, it seemed appellant was threatening to come back shooting.
>
> {¶ 5} Appellant soon drove down Stewart Street.  As the car passed the house, Stoney Williams sat on the door frame of the passenger window and fired two shots across the roof of appellant's vehicle towards Joseph Moreland's house. A bullet grazed Angela Moreland and passed through Cherish's head. Notwithstanding the bullet hole through the back of her head, she awoke crying at the scene. Regrettably, Cherish died less than two days later.

*State v. Clark,* 2009 WL 1915211, ECF Dkt. #5-1 at 349-350.

II.  **PROCEDURAL HISTORY**

   A.   **State Trial Court**

On May 17, 2007, Petitioner was indicted by direct presentment for:

---

[2]Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

-one count of aggravated murder, in violation of R.C. 2903.01(A)(F)(Count One);

-one count of aggravated murder in violation of R.C. 2903.01(C)(F)(Count Two);

-one count of aggravated murder in violation of R.C. 2903.01(B)(Count Three)[3]; and

-one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1)(B)[4].

ECF Dkt. #5-1 at 47-49. Each count of the indictment had a firearm specification pursuant to R.C. 2941.146(A).[5] *Id.*

A jury was empaneled on January 7, 2008 and on January 14, 2008, the jury acquitted Petitioner of the aggravated murder charges in Counts One and Two, and entered guilty verdicts on Counts Three and Four, with the accompanying specifications. ECF Dkt. #5-1 at 215-216. On

---

[3]R.C. 2903.01, captioned, "Aggravated murder," reads, in pertinent part:

(A) No person shall purposely, and with prior calculation and design, cause the death of another. . .

(B) No person shall purposely cause the death of another . . . while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, trespass in a habitation when a person is present or likely to be present, terrorism, or escape.

(C) No person shall purposely cause the death of another who is under thirteen years of age at the time of the commission of the offense.

[4]R.C. 2923.161, captioned "Improperly discharging firearm at or into habitation or school safety zone," reads, in pertinent part, "(A) No person, without privilege to do so, shall knowingly do any of the following: (1) Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual. . ."

[5]R.C. 2941.146, captioned, "Specification concerning discharge of firearm from motor vehicle," reads, in pertinent part:

(A) Imposition of a mandatory five-year prison term upon an offender under division (B)(1)(c) of section 2929.14 of the Revised Code for committing a violation of section 2923.161 of the Revised Code or for committing a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another and that was committed by discharging a firearm from a motor vehicle other than a manufactured home is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender committed the offense by discharging a firearm from a motor vehicle other than a manufactured home.

January 16, 2008, Petitioner was sentenced to a term of imprisonment of fifteen years to life on Count Three and five years on Count Four, to be served consecutively. The two specifications were merged, and the trial court imposed an additional five-year sentence on the single specification to be served consecutively to the sentences on Counts Three and Four, for an aggregate sentence of twenty-five years to life. *Id.* at 219-220.

### B. Direct Appeal

On January 5, 2008, Petitioner, through counsel, filed a notice of appeal to the Ohio Court of Appeals for the Seventh District. *Id.* at 217-218. Petitioner, raised the following assignments of error in his amended appellate brief:

> ASSIGNMENT OF ERROR I:
>
> THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S PRETRIAL MOTION TO SUPPRESS EVIDENCE AND DENIED APPELLANT LIBERTIES PROTECTED BY U.S. CONST., AMEND. XVI AND OHIO CONST. ART. I, §14.
>
> ASSIGNMENT OF ERROR II:
>
> THE TRIAL COURT ERRED IN NOT SUPPRESSING APPELLANTS STATEMENT MADE IN THE STAIRWELL AS THE FRUIT OF THE ILLEGAL GOVERNMENT CONDUCT, VIZ.: THE MIRANDA VIOLATION.
>
> ASSIGNMENT OF ERROR III:
>
> THE TRIAL COURT ERRED AND DENIED APPELLANT LIBERTIES BY U.S. CONST., AMEND, V AND XIV AND BY OHIO CONST. ART I, §§2, 10, AND 16 WHEN IT SENTENCED APPELLANT TO CONSECUTIVE SENTENCES ON COMPLICITY TO MURDER AND COMPLICITY TO DISCHARGE A FIREARM INTO A HABITATION OR SCHOOL.
>
> ASSIGNMENT OF ERROR IV:
>
> APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE, AND THE TRIAL COURT ERRED IN OVERRULING THE MOTIONS FOR ACQUITTAL PURSUANT TO OHIO CRIM.R. 29.
>
> ASSIGNMENT OF ERROR V:
>
> APPELLANT'S CONVICTIONS AND PRISON SENTENCE VIOLATE U.S. CONST. AMEND. VII AND XIV AND OHIO CONST. ART. I, §§1, 2, 9, AND 16 AS THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> ASSIGNMENT OF ERROR VI:
>
> THE TRIAL COURT LACKED AUTHORITY TO TRY APPELLANT ON COUNT THREE OF THE INDICTMENT AS THE COUNT FAILED TO STATE AN OFFENSE AND VIOLATED OHIO CONST. ART I, § 10.

*Id.* at 264-165.

On June 29, 2009, the Seventh District Court of Appeals affirmed the trial court's judgment of conviction and sentence. *Id.* at 348-369.

### C. Supreme Court of Ohio

On March 25, 2009, Petitioner filed a timely appeal to the Supreme Court of Ohio. *Id.* at 370-372. In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

> PROPOSITION OF LAW I.
>
> THE DOUBLE JEOPARDY CLAUSE OF THE OHIO AND UNITED STATES CONSTITUTIONS PROTECT A DEFENDANT FROM MULTIPLE PUNISHMENTS WHEN THE EVIDENCE SHOWS THAT TWO OFFENSES WERE COMMITTED WITH THE SAME ANIMUS.
>
> PROPOSITION OF LAW II.
>
> FELONY MURDER IN OHIO IS NOT A STRICT LIABILITY OFFENSE. AN INDICTMENT WHICH CHARGES FELONY MURDER FAILS TO STATE AN OFFENSE IF IT FAILS TO SET FORTH A CULPABLE MENTAL STATE.
>
> PROPOSITION OF LAW III.
>
> AN ARREST BASED MERELY ON THE STATEMENTS OF BYSTANDERS IS INSUFFICIENT PROBABLE CAUSE UNDER U.S. CONST., AMEND. IV AND XIV AND OHIO CONST., ART I, §14 AND ALL EVIDENCE OBTAINED AS A RESULT OF SUCH AN ARREST MUST BE SUPPRESSED.
>
> PROPOSITION OF LAW IV.
>
> A STATEMENT MADE IMMEDIATELY AFTER A MIRANDA VIOLATION, WITH NO INTERVENING EVENTS, MUST BE SUPPRESSED AS THE "FRUIT" OF THE ILLEGAL GOVERNMENT CONDUCT.
>
> PROPOSITION OF LAW V.
>
> A CONVICTION BASED UPON INSUFFICIENT EVIDENCE VIOLATES U.S. CONST., AMEND. XIV AND OHIO CONST., ART. I, §§1, 2, AND 16.

*Id.* at 374.

On November 4, 2009, the Ohio Supreme Court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question. *Id.* at 415.

### D. Motions for a New Trial

During the pendency of his direct appeal, on September 4, 2009, Petitioner, acting *pro se*, filed a motion for new trial based upon newly discovered evidence in the Mahoning County Court of Common Pleas. *Id.* at 416-420. On June 21, 2010, Petitioner filed a second motion for new trial predicated upon newly discovered evidence. *Id.* at 421-429. On July 21, 2010, the trial court denied both motions. *Id.* at 430. No appeal was taken.

## III. 28 U.S.C. § 2254 PETITION

On June 4, 2010, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus. ECF Dkt. #1. Petitioner raises the following grounds for relief:

GROUND ONE:

INSUFFICIENT EVIDENCE PERTAINING TO THE CHARGES THAT I WAS FOUND GUILTY OF. CHARGES: FELONY MURDER/IMPROPER DISCHARGE OF A FIREARM AS A RIDER & ABETTOR WITH A GUN SPECIFICATION.

GROUND TWO:

THE TRIAL COURT ERRED IN NOT SUPPRESSING APPELLANT'S STATEMENT MADE IN THE STAIRWELL AS THE FRUIT OF THE ILLEGAL GOVERNMENT CONDUCT: THE MIRANDA VIOLATION.

ECF Dkt. #1.

## IV. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*,

822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.     Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. §2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

### B.     Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see*

*also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal

courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1) whether the petitioner failed to comply with an applicable state procedural rule;

(2) whether the state courts actually enforced the state procedural sanction;

(3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as

substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## V.    STANDARD OF REVIEW

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 4, 2010, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus. The AEDPA provides:

-10-

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A. Decisions of lower federal courts may not be considered.
>
> B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C. The state court decision may be overturned only if:
>
> 1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

-11-

      2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

      3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

      4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore,

672,676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

> The United States Supreme Court recently observed:
>
> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI. ANALYSIS

### A. Ground One

In Ground One, Petitioner contends that the evidence supporting his convictions was insufficient to support the charges for which he was ultimately convicted. The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reaching its determination as to the sufficiency of the evidence, a court may not substitute its determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. See *id.*; see also *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.1983).

To determine whether the state court unreasonably applied the sufficiency-of-the-evidence standard of *Jackson v. Virginia*, * * * "[f]irst, [the Court] must ask whether the evidence itself was sufficient to convict.... [and] [t]he inquiry ends if [the Court] determines that there was sufficient evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir.2010) (citation omitted). Second, "[i]f [the Court] find[s] that the evidence is insufficient to convict, [the Court] must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that

-13-

a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt." *Id.* (citation omitted). The result of this double deference is that "habeas corpus relief is appropriate based on insufficient evidence only where we find, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007). On habeas review, federal courts must assume that the jury "resolve[d] conflicts in the testimony," "weigh[ed] the evidence," and drew "reasonable inferences" therefrom. *Jackson*, supra, at 319. A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.

The Seventh District provided the following analysis of Petitioner's insufficiency of the evidence claim:

> {¶ 47} Sufficiency of the evidence is a legal test dealing with adequacy, as opposed to weight of the evidence. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. It is the standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. Thus, an appellate court reviews the denial of a Crim.R. 29 motion for acquittal using the same standard that an appellate court uses to review a sufficiency of the evidence claim. *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965; *State v. Mayas* (Dec. 6, 2000), 7th Dist. No. 98JE14.
>
> {¶ 48} In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court determines, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could find that the elements of the offense were proven beyond a reasonable doubt. *State v. Goff* (1998), 82 Ohio St.3d 123, 138, 694 N.E.2d 916. In other words, the evidence is sufficient if, after viewing the evidence in the light most favorable to the state, reasonable minds can reach different conclusions as to whether each element has been proven beyond a reasonable doubt. *Carter*, 72 Ohio St.3d at 553, 651 N.E.2d 965; *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 263, 381 N.E.2d 184.
>
> {¶ 49} Appellant focuses his argument here on the complicity element as he was convicted of felony murder and improper discharge as an aider and abettor. He presents the argument that mere presence is insufficient and thus the fact that he was driving the car from which the passenger fired is not enough for complicity.
>
> {¶ 50} To uphold a conviction for complicity by aiding and abetting, the evidence must show that with shared criminal intent, the defendant supported, assisted, encouraged, cooperated with, advised or incited the principal in the commission of the crime. *State v. Johnson* (2001), 93 Ohio St.3d 240, 245-246, 754 N.E.2d 796. Although an innocent bystander who is merely along for the ride is not complicit, complicity may be demonstrated by circumstantial as well as direct evidence. See *id.* Participation in criminal intent can be inferred from circumstances surrounding the offense including presence, companionship and conduct before and after the

offense is committed. *Id.* at 243, 245-246, 754 N.E.2d 796. Actual participation in the act is not required. *Id.*

{¶ 51} The mental state here is knowingly, specifically knowingly discharging a firearm at or into a habitation. R.C. 2923.161(A)(1). Considering all of the evidence in the light most favorable to the state, a rational fact-finder could believe that appellant was a complicitor to Stoney Williams, the principal offender.

{¶ 52} Notably, it was appellant, not Stoney Williams, who had argued with Joseph Moreland a short time earlier that night. Stoney Williams was not even present during the altercation. The argument was confirmed by appellant's brother, Kevon Moreland, and another cousin, Lewon Bell, who is Cherish's brother. (Tr. 335, 384). Specifically, Joseph Moreland, who is appellant's cousin, had told appellant to leave his house on Stewart Street because he was drunk and seemed on the verge of starting a fight with another of Joseph Moreland's guests. (Tr. 230, 246). Appellant was under the impression that his cousin had taken the side of a non-relative over him. (Tr. 233). He was likely humiliated by the fact that he fell into a child's power car when Joseph Moreland pushed him, all in front of the person with whom appellant had a problem. (Tr.247). According to Joseph Moreland, just before he left, appellant made a threatening statement that implied that he would return with a gun. (Tr. 231, 250-251).

{¶ 53} After leaving Joseph Moreland's house, appellant dropped off his brother and cousin at a party. Instead of going in with them, appellant drove away with Stoney Williams. Both appellant and Stoney Williams had been at this party earlier, and appellant's brother and cousin both saw Stoney Williams with a gun at that time. (Tr. 338, 343, 386-387).

{¶ 54} Joseph Moreland testified that appellant called him and said he would be arriving shortly, which caused Joseph Moreland to argue loudly with appellant over the telephone, pointing out to appellant that he had children at the house. (Tr. 231, 232, 234). Others heard Joseph Moreland arguing on the telephone minutes before the shooting. (Tr. 262, 357).

{¶ 55} In the meantime, appellant picked up a friend of Stoney Williams, Darryl Mason, who had never met appellant. Darryl Mason testified that appellant was acting mad and wild and was rocking back and forth and listening to loud music. (Tr. 306, 309). Appellant drove straight to Stewart Street instead of back to the party. (Tr. 306). Darryl Mason heard appellant say that someone was "trying to play him" and heard appellant ask Stoney Williams if he was ready. (Tr. 307, 316). Appellant then yelled something, which Darryl Mason could not understand, at which point Stoney Williams fired two shots at the house. (Tr. 309-310).

{¶ 56} Angela Moreland and Jean Madison confirmed that the shots came from a car which they identified as being the one appellant drives. (Tr. 266, 364). Joseph Moreland specifically testified that at the time of the shooting, he saw appellant driving that car. He stated that the shots were fired over the hood by the front seat passenger. (Tr. 234, 240).

{¶ 57} After the shooting, appellant approached his brother, Kevon Moreland, and his cousin, Lewon Bell, as they were responding to a call that Cherish had been shot. However, appellant was now a passenger in a different car. (Tr. 400). When they refused to get in the car with him, appellant walked along side them to the crime scene. (Tr. 345). Lewon Bell testified that he asked appellant if he shot Cherish, who was Lewon's sister, and appellant responded, "I think Stoney shot in the air." (Tr.

> 346). Kevon Moreland confirmed that appellant, his brother, made this statement. (Tr. 391).
>
> {¶ 58} The police quickly found the car appellant was driving; it was located at the house of its owner, the mother of appellant's children. A spent shell casing was found between the windshield and the hood on the passenger side of the car. (Tr. 406). Later, Stoney Williams was apprehended, and his hands tested positive for gunshot residue. (Tr. 471).
>
> {¶ 59} Since Cherish was standing right next to the porch when she was shot and Joseph Moreland saw the other bullet hit the ground in front of the porch, the firing at the habitation was established. (Tr. 237). Viewed in the light most favorable to the prosecution, the facts discussed above establish sufficient evidence for finding that appellant aided and abetted Stoney Williams in firing those shots at the habitation, which shots proximately resulted in the death of Cherish Moreland.
>
> {¶ 60} That is, appellant implied to the person who angered and humiliated him that he would return with a gun. He immediately picked up an armed person. This armed person was seen to have a gun a short time earlier at the same party attended by appellant. Appellant called the intended target, still threatening to come over and asking the target to exit his house. Appellant was angry. He drove to the target's house while complaining about someone "trying to play him." He asked the shooter if he was ready and yelled something just before the shooting. The shooter leaned over the hood of appellant's car and fired two shots.
>
> {¶ 61} The evidence and the reasonable inferences to be drawn therefrom sufficiently established more than mere presence. This assignment of error is overruled.

*Clark,* supra.

In his traverse, Petitioner contends that "[t]he state did not prove beyond a reasonable doubt that Appellant Clark was in complicit. [sic] in the murder of Cherish Moreland and the shooting of the residence." ECF Dkt. #10 at 1269. Petitioner challenges the fact that his intent in this case was established largely by circumstantial evidence. However, the Eighth District correctly observed that participation in criminal intent can be inferred from circumstances surrounding the offense including presence, companionship and conduct before and after the offense is committed. *State v. Johnson,* supra, at 234, 245-246. Actual participation in the act is not required. *Id.* Having reviewed the trial transcript, the undersigned recommends that the Court find that Petitioner's convictions were supported by sufficient evidence. The evidence detailed in the state appellate court's opinion was sufficient to allow a rational factfinder to find each and every element of the crimes charged, and, as such, the undersigned need not recount that evidence in detail here. Accordingly, Ground One should be dismissed.

### B. Ground Two

Petitioner also contends that his constitutional rights were violated when the trial court refused to suppress a statement he made in the stairwell of the police station while he was being transported to jail, despite the fact that the trial court suppressed statements Petitioner made during an interrogation that occurred approximately thirty minutes before his statement in the stairwell. The interrogation was conducted despite the fact that Petitioner refused to waive his rights articulated in *Miranda v. Arizona*, 384 U.S. 436, 86 S Ct 1602 (1966). Not only did Petitioner refuse to sign the written *Miranda* waiver, he actually wrote "NO WAIVER" on the form. ECF Dkt. #6-1 at 500. At the conclusion of the interrogation, Petitioner was arrested for the felonious assault of Cherish Moreland. According to the testimony provided by Detective-Sergeant John Kelty, who conducted the interrogation, as Petitioner was being led away by officers, who were taking him down the stairs of the police station, Petitioner started to scream, "It was Stoney Williams who did it. It was Stoney Williams." ECF Dkt. #6-1 at 502. Officer Phil Chance, who was one of the officers who led Petitioner to the stairwell, provided similar testimony. *Id.* at 484. Although the trial court suppressed Petitioner's statements made during the interrogation, the trial court reasoned that Petitioner's statement in the stairwell was voluntary, and, therefore, declined to suppress the statement. *Id.* at 58. The Seventh District provided the following analysis of Petitioner's "fruit of the poisonous tree" argument:

> {¶ 22} The alternative suppression argument presented is that even if the statement in the stairwell need not be suppressed as the fruit of an unlawful arrest, it must be suppressed as the fruit of a *Miranda* violation. Appellant states that it is irrelevant that the trial court found the stairwell statement to be voluntary as a *Miranda* violation is distinct from this concept of voluntariness. Appellant concludes that after the trial court granted suppression of appellant's videotaped statement on the grounds that he did not waive his rights under *Miranda*, the stairwell statement, which occurred as they were transporting him from the interview room to jail, should likewise have been suppressed. However, assuming the trial court was correct in suppressing the statements made during interrogation due to appellant's statement that he did not wish to waive his rights, this did not taint the stairwell statement.
>
> {¶ 23} As aforementioned, incriminating statements made after an illegal arrest need not always be suppressed as fruits of the poisonous tree. *Brown*, 422 U.S. at 599. In such cases, the court is to determine whether the statement was an act of free will. *Id.* at 603. In making that determination, voluntariness is the threshold requirement which can purge the primary taint. *Id.* 603-604.

-17-

{¶ 24} However, the fruit of the poisonous tree doctrine does not apply to *Miranda* violations. *State v. Farris*, 109 Ohio St.3d 519, 849 N.E.2d 985, 2006-Ohio-3255, ¶ 22, 25, 27. See, also, *Missouri v. Seibert* (2004), 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643; *Oregon v. Elstad* (1985), 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222. A *Miranda* violation requires suppression of statements elicited during custodial interrogation. Where there is such a violation for statement number one, statement number two is not excluded as the fruit of the poisonous tree; rather, the test is whether the second statement is actually a continuation of the first statement. *Farris*, 109 Ohio St.3d 519 at ¶ 27, 36, 849 N.E.2d 985. In determining whether one statement is a continuation of the next statement, the court is to consider factors such as whether there is overlapping content in the statements, the timing and setting of each statement, and the continuity of personnel. *Id.* at ¶ 28, 849 N.E.2d 985.

{¶ 25} The suspect's state of mind, i.e. voluntariness, is key. *Id.* at ¶ 26, 34-35, 849 N.E.2d 985. "Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." *Elstad*, 470 U.S. at 309. Thus, appellant incorrectly argues that whether his statement was voluntary is irrelevant. The trial court's finding of voluntariness is the key here, and the correctness of that finding is uncontested.

{¶ 26} In any event, we shall proceed to consider the totality of the circumstances here. The fact that the above cases dealt with subsequent valid *Miranda* warnings prior to the subsequent statements would not appear to make those statements more voluntary than the one at issue here. The statement here was not made during interrogation or even during conversation. The interrogation was over, and appellant was in a stairwell on his way to jail when he spontaneously grabbed a stair rail and made his statement. Thus, there was no place for the read ministration of *Miranda* warnings as this is not a "question first- Mirandize later" scenario.

{¶ 27} *Miranda* is applicable only when the officer elicited the statement during interrogation by express questioning or its functional equivalent. *Rhode Island v. Innis* (1980), 446 U.S. 291, 300-301, 100 S.Ct. 1682, 64 L.Ed.2d 297. See, also, *State v. Tucker* (1998), 81 Ohio St.3d 431, 436, 692 N.E.2d 171. Interrogation is a measure of compulsion over and beyond that which is inherent in custody itself. *Innis*, 446 U.S. at 300. Transportation to jail is not compulsion over and beyond that inherent in custody itself. Thus, the admittedly voluntary statement can be viewed as an unsolicited, gratuitously made declaration that was not the product of the interrogation.

{¶ 28} Furthermore, the relevant factors do not support a conclusion that the stairwell statement was a continuation of the suppressed interview. Although the second statement was not made all that long after (within a half hour of) the suppressed statement, a new law enforcement officer was involved. That is, the original arresting officer, who was not involved in the interrogation, had returned to help with transport. Moreover, the stairwell setting was different than the interrogation room. As reviewed above, there was no interrogation atmosphere as the interrogation had been formally terminated. In addition, the contents of the statements did not overlap. That is, his suppressed statement did not say that he was just the driver. Nor did it disclose that Stoney Williams was the shooter. Yet, this was the sole claim in the stairwell statement. (Supp. Tr. 23).

{¶ 29} Finally, even if suppression of the stairwell statement should have occurred, the admission of the statement could be seen as harmless because there was overwhelming evidence that appellant was driving the car from which Stoney

-18-

> Williams fired the shots. See *State v. Issa* (2001), 93 Ohio St.3d 49, 68, 752 N.E.2d 904. The car involved was the car appellant had driven to the target house hours earlier. Appellant's cousin identified him as driving the car at the time the shots were fired and as threatening to return with a gun just minutes prior to the shooting. Appellant's brother and other cousin both testified that appellant told them that Stoney shot into the air. For all of these reasons, this assignment of error is overruled.

*Clark,* supra.

Petitioner contends that the two individuals who testified at trial about his statement in the stairwell, Detective/Sergeant Kelty and Officer Chance, were the same individuals who were involved in the illegal interrogation, and, therefore, his statement in the stairwell should be suppressed as part and parcel of the interrogation. In fact, Officer Chance was not present during the interrogation. According to Detective-Sergeant Kelty's testimony at trial, after Petitioner was arrested, Detective-Sergeant Kelty called Officer Chance to transport Petitioner to the county jail. ECF Dkt. #6-7 at 1048-1049. As Chance and his partner were leading Petitioner down the stairwell, he began crying and screaming that Stoney Williams "did it." *Id.* at 1049. Accordingly Petitioner's assertion that the statement in the stairwell was a part of the ongoing interrogation by Detective-Sergeant Kelty is not supported by the facts adduced at trial. Moreover, based upon the testimony given at the suppression hearing and the trial, Petitioner cannot establish that the state court's decision was either contrary to nor an unreasonable application of *Elstad*, supra, and its progeny. Therefore, the undersigned recommends that the Court find no merit in Ground Two.

## VII.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition with prejudice.

DATE: April 30, 2012

                       */s/George J. Limbert*
                       GEORGE J. LIMBERT
                       UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).